**PACIFIC SCIENTIFIC COMPANY,**
a corporation, Plaintiff,

v.

**AEROTEC INDUSTRIES OF CALIFORNIA,** a corporation, Aerotec Industries, Inc., a corporation, Universal Oil Products Company, a corporation, Defendants.

**Civ. No. 63–64.**

United States District Court
S. D. California,
Central Division.

July 12, 1965.

Christie, Parker & Hale, by C. Russell Hale, and D. Bruce Prout, Pasadena, Cal., for plaintiff.

Miketta, Glenny, Poms & Smith, by William Poms, Los Angeles, Cal., Guion and Stevens, by E. Seward Stevens, Litchfield, Conn., of counsel, for defendants.

THURMOND CLARKE, District Judge.

This is an action for infringement of letters patent, arising under 35 U.S.C. § 281. Plaintiff seeks a permanent injunction, an accounting for profits, treble damages and attorneys' fees. Defendants, by way of counterclaim, seek judgment declaring plaintiff's patent invalid and not infringed.

Plaintiff Pacific Scientific Company owns letters patent Nos. 2,845,233 and 2,845,234 (referred to hereinafter as "233" and "234"), first issued to Leo A. Pfankuch, Clifford E. Cushman and Robert J. Wrighton. The inventors assigned

their patents to Sturgess, Inc. That firm later changed its name to Pacific Scientific Aeroproducts. The company subsequently merged with Pacific Scientific Company and by merger plaintiff became owner of the patents.

Defendant Aerotec Industries of California is a wholly-owned subsidiary of Aerotec Industries, Inc. By stipulation filed in this court, the parent company has assumed any liability that may be imposed upon the subsidiary. At the time of trial, Aerotec Industries, Inc., was a subsidiary of Universal Oil Products. Universal has been made a party defendant by order of the court.

The devices in question are safety reels and harnesses, intended primarily to protect seat occupants in aircraft; there is testimony they are adapted to use in other vehicles, and may be used in transporting freight.

The apparatus gives the seat occupant freedom to operate controls and to move about under ordinary conditions. However, in the event of an abnormal movement of the occupant, such as would occur in a crash or a violent maneuver of the aircraft, an inertia reel locks and prevents further movement of a strap out of a reel, thus holding the person securely in his seat.

Prior to 1950, the sole American manufacturer of inertia safety reels was American Seating Company. Its devices locked up in response to deceleration of the aircraft. In contrast, the apparatus with which we are concerned responds to acceleration of the seat occupant. As plaintiff succinctly states, earlier apparatus was vehicle-sensitive; the present devices are man-sensitive.

Plaintiff's predecessors in interest obtained their first patent (233) only after repeated rebuffs which need be discussed only briefly.

On the first application, the patent office rejected all 10 claims as being covered by prior patents. After this rejection the inventors added claims 11 and 12 which mentioned a separate inertia member. The examiner then rejected all claims, principally on the basis of an earlier acceleration-responsive device (Sharpe patent No. 2,370,921, a snubbing device for dairy cattle). A second amendment likewise was rejected. The inventors added, *inter alia*, claims 23 and 25 (now 7 and 9). On the basis of these amendments, the patent examiner held the Sharpe reference no longer applicable but held the claims were nevertheless unpatentable. The Patent Office Board of Appeals reversed the examiner and allowed these claims.

What is now patent 234 likewise was first rejected on the basis of prior art.

The four claims of plaintiff's patents which defendants are alleged to have infringed (claims 7 and 9 of patent 233 and claims 1 and 5 of patent 234) define a safety apparatus for preventing a seat occupant of a vehicle from being thrown from his seat; an inertia lock device adapted to be mounted on the back of the seat, including a reel, a flexible connector adapted to be coupled to the seat occupant and wound on the reel; an inertia member turnably movable with respect to the reel, means for coupling the inertia member with the reel, and locking means (or means for stopping rotation of the reel), with the inertia member being operable by inertia to cause the locking means to lock the flexible connector when that connector is pulled outwardly from the housing by an abnormal movement of the seat occupant.

Patent 234 is an improvement over the basic patent 233. It has fewer moving parts. In 233, the entire assembly of the inertia reel must shift upward in the case in order to lock. In 234, locking is accomplished by pivoting and rotating of the parts. In the latter mechanism, the inertia mass has been combined with the locking member. Claims 1 and 5 of the improvement patent differ from the claims of the basic patent by defining the locking means as being operable in response to the relative rotation between the reel and the inertia member.

Defendants' safety device likewise is designed to allow the seat occupant normal movement unless emergency condi-

tions accelerate a reel and engage a locking mechanism. The apparatus includes a rotatably mounted reel, a flexible connector or webbing going across the shoulders of the user and fastening into a lap belt, a rewind spring which lets the spool unwind when the user leans forward and wind when he moves back, locking dogs or pawls which function as inertia members, and springs to hold the pawls in place.

In the words of defendants' patent: " * * * The spool * * * and locking pawls * * * will remain in the relative positions * * * up to a certain predetermined acceleration of the reel spool. * * * Under these conditions the seat occupant will be thrown forward with the result that a sudden force is applied to the belt * * * and the reel spool will be accelerated; at the same time, * * * force is being applied to the locking pawls * * * in a direction tending to have them rotate with the spool. However, inasmuch as the springs * * * constitute the only couple between the pawls and the reel spool and inasmuch as the pawls have inertia and, hence, resist rotation with the spool at the assumed accelerated rate of rotation of the spool, the reel spool will turn relatively to the pawls * * * the amount of movement of the reel spool necessary to project the locking pawls into locking position is enough to close the gap between the edges * * * of each of the grooves * * * and the adjacent edge of the locking pawls, so that, with the pawls in engagement with the locking teeth, rotation of the reel spool in an unwinding direction is positively prevented."

Defendants deny any infringement, and in addition set out six affirmative defenses: Invalidity of plaintiff's patent because of prior invention; invalidity of plaintiff's patent because of prior public use; the subject matter of the purported inventions would have been obvious to one skilled in the art; the claims are not sufficiently set forth in the patents; variance between the patent and the purported invention; estoppel of plaintiff to claim infringement. Defendants further urge there is a misjoinder of inventors. These matters will be discussed seriatim.

Relative to the question of infringement, defendants argue their device has a different mode of operation from plaintiff's in that the reel described in patent No. 233 requires a translation or upward movement of the drum assembly and defendants' reel does not; that defendants' device is unbalanced by having the locking pawl mounted eccentrically on the reel while plaintiff's device is balanced, and that plaintiff's device alone has a manual unlocking feature.

Defendants further urge that their device responds to velocity, while plaintiff's reel responds solely to acceleration. Another factor pointed out as distinguishing the two mechanisms is absence of a separate inertia element in defendants' apparatus.

The parties have devoted a large part of their testimony and their briefs to the question of what force activates (i. e., locks) each of the devices.

It is obvious the various forces discussed—acceleration, centrifugal force, and velocity—are interrelated. An object cannot reach a designated velocity without being accelerated. However, these factors are considered separately in the various analyses presented by the parties' expert witnesses. Key portions of their testimony on this question may be summarized thus:

Howard M. Luttrell, design engineer for Pacific Scientific Company: the Aerotec device locks from a combination of centrifugal force and acceleration; it is impossible for the device to lock solely from velocity. Around 10 G's (10 times the force of gravity) locking is due almost entirely to acceleration. Below five G's the greater force is velocity. Plaintiff's devices are responsive solely to acceleration.

James E. Glauser, director of engineering of plaintiff corporation: the Pacific Scientific devices "have been made intentionally to be as sensitive to acceleration only as possible." In the Aerotec device any sudden acceleration above a predetermined value causes a dog (pawl) to pivot and engage a locking ring. Defendants' contention their device responds solely to velocity or to centrifugal force is "impossible." In a crash test at 47 miles per hour the Aerotec device locked 79½ per cent from acceleration. In defendants' device acceleration of the strap or harness causes the spool to move with angular velocity, and centrifugal force moves the pawls outward to locking position.

Leo E. Ay, a Pacific Scientific designer: in a test simulating a 47-miles-per-hour crash the Aerotec apparatus locked 80 per cent from acceleration and 20 per cent from velocity.

Jerold L. Swedlow, a graduate student at California Institute of Technology, testifying for defendants: "I might point out that the motion or the terms 'velocity' and 'acceleration' are interconnected. That is, if you have a still body and you subject it to an acceleration, it will acquire velocity. On the other hand, if you have a still body, which you would like to impart some velocity to, you must accelerate it. But the forces, and in fact these motions, themselves, can be considered separately. So that although velocity and acceleration are tied, you can look at them one at a time if you were doing an engineering analysis." Acceleration would tend to move the locking pawl on the Aerotec device, but the pawl is blocked from so moving, and locking therefore is caused by centrifugal force. The Aerotec reel responds to velocity of the strap or harness.

Albert L. Gabriel, a patent attorney testifying for defendants: defendants' device is responsive to velocity or centrifugal force.

C. Norman Sjogren, president of Chemet Engineers, a rebuttal witness for plaintiff: acceleration is the major force causing defendants' device to lock. At a constant acceleration of one G, locking would be primarily from velocity, but this condition is not a normal one.

Careful examination of the testimony and of the exhibits persuades the court the distinction defendants seek to draw here is not a valid one, particularly in view of the terminology of defendants' patent describing their device as acceleration-operated.

The elements of teeth and pawls are reversed in plaintiff's and defendants' devices. This does not negate infringement.

In assailing the validity of plaintiff's patents, defendants cite as prior art three patents for trolley-catching devices (Ham patent No. 700,763, Burdon patent No. 888,418, Ricketts patent No. 1,-393,570). These earlier patents apparently were not considered by the patent office in connection with plaintiff's devices.

Trolley catchers are heavy, bulky devices designed to withstand far less strain than that imposed on an aircraft safety reel; but this fact is inapposite in resolving the prior art question.

It is said that if the elements and purposes in one art are related and similar to those in another art, and because by reason of that relation and similarity make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, then such arts must be said to be analogous; and, if the converse be true, they are non-analogous arts. Stearns v. Tinker & Rasor, 220 F.2d 49 (9th Cir. 1955).

The Manual of Patent Office Examining Procedure (Section 904.01 c on page 155) sets out the rule thus:

"Analogous Arts"

"Not only must the art be searched with which the invention claimed is

classifiable, but also all analogous arts regardless of where classified.

"The determination of when arts are analogous is at times difficult. It depends upon the necessary essential function or utility of the subject matter covered by the claims, and not what it is called.

"For example, a tea mixer and a concrete mixer are for the same art, namely, the mixing art, this being the necessary function of each. Similarly a brick-cutting machine and a biscuit-cutting machine have the same necessary function."

Even if we assume a relation and a similarity of elements in a safety reel and a trolley-catcher, the purposes of the two devices are unrelated within the rule above set forth.

The court finds plaintiff's devices were not anticipated by prior art, nor has protection of the invention been lost by reason of prior public use.

Subject matter of plaintiff's invention was not obvious to one skilled in the art. The fact is emphasized by the ready acceptance of the man-sensitive safety reel by the military services and the aircraft industry, and by its high degree of commercial success.

The court finds the claims are sufficiently set forth in plaintiff's patents, and the claims adequately describe the devices sought to be patented.

On the issue of file wrapper estoppel as defendants seek to apply it herein, it is important to note the term "separate inertia element" has been used in two contexts. Both plaintiff's and defendants' devices have inertia elements *separate from the drum or reel*, not separate from the locking means. Apropos this distinction, the court finds there is no element of file wrapper estoppel.

■ The granting of letters patent raises a prima facie presumption the named persons were inventors of the patented devices. The burden is upon defendants to show otherwise by strong,

clear, and convincing evidence. This, defendants have not accomplished.

■ The court finds plaintiff's patents are valid and infringed. It further finds plaintiff is entitled to an injunction against further infringement and to an accounting for profits; but plaintiff is not entitled to treble damages nor to attorneys' fees. 35 U.S.C. §§ 284, 285.

Counsel for plaintiff shall prepare and lodge proposed findings of fact, conclusions of law, and judgment.